O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

DEANNE NIEDZIELA,

     Plaintiff,

  v.

VIATOR, INC.,
TRIPADVISOR, INC., and
DOES 1-50, inclusive,

     Defendants.

Case No. 8:24-cv-01224-JWH-JDE

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 17]**

# I.  SUMMARY OF DECISION

Before the Court is the Motion of Defendants Viator, Inc. and TripAdvisor, Inc. to dismiss the Complaint of Plaintiff Deanne Niedziela.[1]  The Court concludes that this matter is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court **GRANTS in part** and **DENIES in part** Defendants' instant Motion.

# II.  BACKGROUND

## A.    Factual Allegations[3]

Viator, a subsidiary of the online travel agency company Tripadvisor, "is a well-known online platform that specializes in offering tours, activities, and travel experiences around the world."[4]  Viator "provides travelers with a convenient way to discover and book a wide range of activities, such as guided tours and sightseeing excursions,"[5] by partnering with local tour operators and businesses.[6]

Partly by paying for articles to be published on "national websites such as Business Insider," Viator has developed a reputation for offering high-quality and safe travel experiences.[7]  For example, Viator has paid for articles that explain how Viator "pre-vet[s]" all of the listings on its website.[8]  Viator has also paid for articles that promote Viator's process for "choosing the tours and activities that make it onto [the Viator] platform."[9]  According to those articles, Viator "takes the vetting process pretty

---

[1]    Defs.' Mot. to Dismiss (the "Motion") [ECF No. 17].

[2]    The Court considered the documents of record in this action, including following papers: (1) Compl. (the "Complaint") [ECF No. 1-1]; (2) Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 25]; (4) Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 26]; and (5) Defs.' Notice of Suppl. Authority [ECF No. 31].

[3]    The following factual summary is based upon the allegations in the Complaint, which are assumed to be true for the purpose of the instant Motion.  *See Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).

[4]    Complaint ¶ 9.

[5]    *Id.*

[6]    *Id.* at ¶ 10.

[7]    *Id.* at ¶ 13.

[8]    *Id.*

[9]    *Id.* at ¶ 14.

seriously, ensuring that every experience featured on their platform is of the highest quality."[10]  To ensure such high quality, Viator "rel[ies] on a dedicated team of experts who evaluate each tour and activity based on various criteria such as safety measures" so that customers who book activities through Viator "can rest assured that [they're] getting the cream of the crop when it comes to travel experiences."[11]

In early 2023, Niedziela and her husband chose to take a vacation to Costa Rica through Viator because of Viator's "reputation for safe and fun travel experiences."[12] Using the Viator website, the Niedzielas found and booked the Full Day Poas Volcano, La Paz Waterfall Gardens and Coffee Plantation Experience (the "Waterfall Gardens Tour").[13]

The Waterfall Gardens Tour featured a "Badge of Excellence," which indicated that the Waterfall Gardens Tour "met [Viator's] highest quality standards and [was] well-reviewed by travelers."[14]  According to the Viator website, Viator intended consumers to construe the Badge of Excellence as a sign that they would be "in good hands" if they booked the Waterfall Gardens Tour.[15]  In addition to the Badge of Excellence, the listing for the Waterfall Gardens Tour indicated that the event was "[s]troller accessible" and that "[m]ost travelers" would be able to participate.[16]  The listing also noted that the Waterfall Gardens Tour would be "conducted by a professional guide with 30+ years experience."[17]

The Waterfall Gardens Tour listing did not warn consumers that the event could be dangerous.[18]  But before the Niedzielas booked the tour, several people were "grievously injured" on the Waterfall Gardens Tour.[19]  Most of those injuries were "predictable," as they occurred when large branches fell from trees hanging over the

---

[10]     *Id.*

[11]     *Id.*

[12]     *Id.* at ¶ 25.

[13]     *Id.* at ¶¶ 17 & 25.

[14]     *Id.* at ¶ 19.

[15]     *Id.*

[16]     *Id.* at ¶ 21.

[17]     *Id.* at ¶ 20 (internal quotation marks omitted).

[18]     *Id.* at ¶ 21.

[19]     *Id.* at ¶ 22.

travelers' pathway.[20]  That pathway was "constructed in 1998–2000," without "cutting one tree or vine system."[21]

After reviewing the Waterfall Gardens Tour listing on the Viator website, the Niedzielas determined that it would be safe for them, so they purchased tickets for the tour through the Viator website.[22]  While Niedziela was on the Waterfall Gardens Tour, a large tree branch fell on her.[23]  The force of the branch broke Niedziela's spine and paralyzed her.[24]  Based upon those injuries, Niedziela asserts one claim for negligence against Defendants, through which she seeks damages based upon her medical expenses, her reduced capacity to work, and the pain and suffering that she has experienced.[25]

## B.    Procedural History

Niedziela filed this action in Orange County Superior Court in May 2024.[26]  In June 2024, Defendants removed the action to this Court.[27]  The following month, Defendants moved to dismiss the Complaint, advancing the following arguments:

- Defendants are immune from liability under Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, because they are internet publishers of third-party content;
- Niedziela agreed to a broad waiver of liability when her husband booked the Waterfall Gardens Tour tickets through the Viator website; and
- Niedziela has not distinguished between the actions of Viator and TripAdvisor.[28]

Defendants also moved to transfer this case to Massachusetts because Niedziela agreed, by consenting to Viator's Terms of Use when booking the Waterfall Gardens Tour tickets through the Viator website, that all actions against Defendants would be filed

---

[20]    *Id.* at ¶ 23.

[21]    *Id.*

[22]    *Id.* at ¶¶ 25 & 26.

[23]    *Id.* at ¶ 27.

[24]    *Id.*

[25]    *Id.* at ¶ 32.

[26]    *See id.*

[27]    *See* Notice of Removal [ECF No. 1].

[28]    *See generally* Motion.

in that state.[29]  After Niedziela filed her Opposition to the Motion, however, Defendants consented to this Court's jurisdiction and withdrew their motion to transfer venue.[30]

## III.  LEGAL STANDARD

### A.    Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am. Family Ass'n*, 277 F.3d at 1120.  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."  *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted).  Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct."  *Id.* at 679.

### B.    Rule 15(a)—Leave to Amend

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the

---

[29]    *See id.*

[30]    *See* Notice of Withdrawal of Mot. to Transfer Venue [ECF No. 28].

allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## IV.  DISCUSSION

### A.   Request for Judicial Notice

In deciding a motion to dismiss, a court generally looks only to the face of the complaint and documents attached thereto.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002).  The court may consider, however, materials that are subject to judicial notice under Rule 201 of the Federal Rules of Evidence.  *See Gerritsen v. Warner Bros. Entertainment, Inc.*, 112 F. Supp. 3d 1101, 1020 (C.D. Cal. 2015).  Rule 201 permits the court to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

The Ninth Circuit also applies the "incorporation by reference" doctrine.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Under that doctrine, the court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Id.* (internal citations and quotations omitted) (alteration in original).

The parties have filed several Requests for Judicial Notice.[31]  Defendants ask the Court to take judicial notice of a screen-captured image of the Waterfall Gardens Tour listing ("Exhibit B");[32] a screen-captured image of the Viator booking screen ("Exhibit D");[33] and a screen-captured image of the Viator Badge of Excellence information page ("Exhibit F").[34]  The contents of those documents—including screen-captured images identical to those shown in Defendants' RJN—are referenced or included in the Complaint.[35]  Niedziela does not oppose the request, and she relies upon and includes portions of those documents in her Opposition.[36]  Accordingly, the Court **GRANTS** Defendants' request takes judicial notice of Exhibits B, D, and F.

---

[31]     *See* Pl.'s Req. for Judicial Notice in Supp. of the Opposition ("Niedziela's RJN") [ECF No. 25-2]; Defs.' Amended Request for Judicial Notice ("Defendants' RJN") [ECF No. 27].

[32]     *See* Defendants' RJN 2:15-20.

[33]     *Id.* at 3:1-3.

[34]     *Id.* at 3:4-6.

[35]     *See generally* Complaint.

[36]     *See, e.g.*, Opposition 17:6–18 (Exhibit D).

Defendants also ask the Court to take judicial notice of a page on the Viator website that discusses the process for submitting tour listings ("Exhibit A") and an archived version of Viator's Terms of Use ("Exhibit C").[37] Niedziela initially objected to Exhibits A and C because they lacked timestamps or dates showing when the images were taken, and she offered alternative versions of Exhibit A ("Exhibits 1 & 2").[38] Following Niedziela's objection, Defendants submitted amended versions of Exhibits A and C, and Niedziela did not renew her objection.[39] Both parties rely upon Exhibits A and C in their briefing, and courts routinely grant requests for judicial notice of archived web pages like those shown in the documents. *See, e.g.*, *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015). Accordingly, the Court **GRANTS** Defendants' request and takes judicial notice of Exhibits A and C, as well as Exhibits 1 and 2, although the Court notes that it "takes judicial notice of the fact that the[] documents exist," not whether they are "valid or binding." *See id.* (quotation omitted).

Niedziela has also provided to the Court various medical records that document the difficulties that she would face in traveling to another jurisdiction.[40] Because Defendants no longer seek to transfer this action to another venue, the Court need not take judicial notice of Niedziela's medical records. Accordingly, Niedziela's RJN is **DENIED**.

## B.    Motion to Dismiss

### 1.    Section 230 Immunity

Section 230 of the CDA provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In other words, Section 230 "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009)). Courts have interpreted the first prong of this test— whether a defendant is a provider or user of an interactive computer service—broadly, *see id.*, and Niedziela does not dispute that Defendants fit within that definition. Thus, whether Section 230 immunizes Defendants from Niedziela's claims in this case turns on

---

[37]    *See* Defendants' RJN 2:21-25.

[38]    *See* Decl. of Artur Aziev (the "Aziev Declaration") [ECF No. 25-1], Exs. 1 & 2.

[39]    *See* Defendants' RJN.

[40]    *See* Aziev Declaration ¶ 3.

whether Niedziela seeks to treat Defendants as publishers or speakers of third-party
content, and, if so, whether Defendants materially contributed to that content.  *See id.*

### a.    Liability as Publisher or Speaker

Defendants contend that, because the Waterfall Gardens Tour listing was provided
by a third-party tour operator, Niedziela necessarily seeks to hold Defendants liable as
publishers or speakers of that content.[41]  The Court disagrees.

The Ninth Circuit has adopted a two-part test to determine whether a plaintiff's
claim is premised upon the defendant's actions as a publisher.  *See Calise v. Meta
Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024).  First, the court must decide whether
the "'right' from which" the defendant's legal duty to the plaintiff "springs" is
"something separate from the defendant's status as a publisher, such as from an
agreement . . . or from obligations the defendant has in a different capacity."  *Id.*  Second,
the court must decide whether the duty "obliges the defendant to 'monitor third-party
content'" to avoid facing liability.  *Id.*

In *Calise*, the plaintiffs alleged that, despite "outwardly claim[ing] that [the
defendant website operator] trie[d] to combat scams," the defendant in fact "refuse[d] to
drive scammers off its platform" and "aggressively solicit[ed] ad sales" that the
defendant knew would likely be false.  *Id.* at 736–37.  Based upon those allegations, the
plaintiffs asserted claims against the defendant for breach of contract, unjust enrichment,
and negligence.  *See id.* at 742–43.  With respect to the plaintiffs' contract claims, which
arose out of "enforceable promises" that the defendant made about its actions to
"combat scam advertisements," the Ninth Circuit held that Section 230 immunity did
not apply.  *Id.* at 743.  But with respect to plaintiffs' unjust enrichment and negligence
claims, the Ninth Circuit held that Section 230 immunity ***did*** apply because "to avoid
liability" for those claims, the defendant "would need to actively vet and evaluate" the
content on its website.  *Id.* at 744.

In holding that Section 230 applied to the plaintiffs' unjust enrichment and
negligence claims, the *Calise* court distinguished the plaintiffs' claims from those asserted
in *Doe v. Internet Brands*, 824 F.3d 846 (9th Cir. 2016).  In *Internet Brands*, the plaintiff
alleged that the defendant, which operated a "networking site for professional and
aspiring models to market their services," failed to warn the plaintiff that two individuals
were using the defendant's website "to identify targets for a rape scheme."  *Id.* at 848.
After she was raped as a part of that scheme, the plaintiff asserted negligence claims
against the defendant website operator, based upon the defendant's failure to warn "users

---

[41]    Motion 10:20–12:9.

that they were at risk of being victimized." *Id.* at 849.  The Ninth Circuit held that Section 230 did not apply to the plaintiff's claim because the plaintiff "attempt[ed] to hold [the defendant] liable for ***failing to warn*** her about information it obtained from an outside source"; "[t]he duty to warn allegedly imposed by California law would not require [the defendant] to remove any user content or otherwise affect how it publishes or monitors such content." *Id.* at 851 (emphasis added).

With respect to the first step of the *Calise* test, it appears that Niedziela's claims do not "spring[]" from a right that is "separate from the defendant's status as publisher." *Calise*, 103 F.3d at 742.  Although many of the allegations in Niedziela's Complaint mirror the breach-of-contract allegations in *Calise*, Niedziela has not asserted a breach of contract claim against Defendants.[42]  So while Niedziela's claim appears to arise at least in part from Defendants' promises to "vet" the tour operators posted on its website, the right on which Niedziela's claim is premised relates to Defendants' status as publishers of the Waterfall Gardens Tour listing, not a separate or independent right.  *Cf. id.*

Turning to the second step of the *Calise* test, it is unclear whether Niedziela's claim "obliges" Defendants to monitor the content on the Viator website.  *See id.* Niedziela alleges that Defendants knew about the "predictable" risks associated with the Waterfall Gardens Tour but that Defendants omitted information about those risks from the listing and instead represented that the Waterfall Gardens Tour was "[s]troller accessible" and appropriate for "[m]ost travelers."[43]  Such allegations are similar to those in *Internet Brands*, 824 F.3d at 851, in that Niedziela appears to assert that Defendants are liable for their failure to warn Niedziela about the potential risks of the Waterfall Gardens Tour, not for Defendants' failure to monitor or remove the Waterfall Gardens Tour listing.  But Niedziela also alleges that Defendants negligently advertised and failed to vet properly the Waterfall Gardens Tour.[44]  Such allegations mimic those in *Calise*, 103 F.4th at 743, in that Defendants could avoid liability only by "actively vet[ting] and evaluat[ing]" the content on the Viator website.  *See id.*

The Court thus concludes that, to the extent that Niedziela's negligence claim is premised upon Defendants' failure to warn, Section 230 does not immunize Defendants from liability because Niedziela does not seek to hold Defendants liable for failing to vet or monitor third-party conduct.  *See Internet Brands*, 824 F.3d at 851.  To the extent that Niedziela's negligence claim is premised upon Defendants' advertisement of the Waterfall Gardens Tour or the inclusion of the Waterfall Gardens Tour on the Viator

---

[42]    *See generally* Complaint.

[43]    *Id.* at ¶¶ 21–23.

[44]    *See id.* at ¶ 32.

website, however, Niedziela does seek to hold Defendants liable as speakers or publishers, and Section 230 applies.  *See Calise*, 103 F.4th at 744.  Therefore, to the extent that Niedziela asserts claims based upon the failure to vet or monitor the Waterfall Gardens Tour listing, the Court must decide whether Defendants meaningfully contributed to the Waterfall Gardens Tour listing.

### b.    Third-Party Content

As an initial matter, there is some dispute regarding whether the Waterfall Gardens Tour listing was in fact provided by a third party or whether Defendants developed that listing on behalf of the third-party tour operator.[45]  Niedziela appears to allege that Defendants posted the listing.[46]  In arguing otherwise, Defendants rely upon information outside of the Complaint and ask the Court to assume that the outside information is accurate.[47]  On a Rule 12(b)(6) motion, the Court cannot consider outside evidence that contradicts the allegations in the Complaint, and, in any event, Defendants' evidence makes little difference here.  Defendants appear to treat the fact that the Waterfall Gardens Tour was created by a third-party tour operator as dispositive of whether the information for which Niedziela seeks to hold Defendants liable was provided by another content provider.[48]  But "it is not enough that a claim, including its underlying facts, stems from third-party content for § 230."  *Calise*, 103 F.4th at 742.  Rather, the Court must "evaluate whether [Defendants] 'materially contributed'" to the Waterfall Gardens Tour listing.  *Id.* at 745.

In general, a website operator does not materially contribute to a third-party posting if the operator "passively displays content that is created entirely by third parties."  *Fair Hous. Council of San Fernando Valley v. Rommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).  Nor does a website operator materially contribute to third-party content by merely providing "tools that can be manipulated by third parties for unlawful purposes" or by "'manipulat[ing]' its recommendations."  *Calise*, 103 F.4th at 745–46 (quoting *Dryoff v. Ultimate Software Grp.*, 934 F.3d 1093, 1098 (9th Cir. 2019)).  But a defendant is deemed to have materially contributed to content that the defendant "is 'responsible, in whole or in part' for creating or developing," *Roommates.com*, 521 F.3d at

---

[45]        *See* Opposition 14:20–28.

[46]        *See* Complaint ¶ 32.

[47]        *See* Reply 19:10–20:11 (arguing that, based upon the information about Viator's sign-up program contained in Exhibit A, the third-party tour operator must have created the Waterfall Gardens Tour listing).

[48]        *See* Motion 12:10–13:25.

1162, or when the plaintiff's claim "does not depend on" the content of the third-party message, *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1094 (9th Cir. 2021).

Niedziela argues that the Badge of Excellence was a material contribution to the Waterfall Gardens Tour listing, but Defendants advance two theories why the Court could conclude otherwise. First, Defendants assert that Niedziela failed to allege that she saw or relied upon the Badge of Excellence when she decided to book the Waterfall Gardens Tour.[49] The Court disagrees. In her Complaint, Niedziela avers that Defendants affixed the Badge of Excellence to the Waterfall Gardens Tour listing and that the Badge of Excellence indicated that Defendants believed that the Waterfall Gardens Tour was a high-quality experience that met Viator's "high standards."[50] Niedziela also pleads that, after viewing the Waterfall Gardens Tour listing through the Viator website—and, therefore, also viewing the Badge of Excellence that was displayed with that listing—she decided to book the tour.[51] Such allegations are sufficient for the Court reasonably to infer that the Badge of Excellence influenced Niedziela's decision to book the Waterfall Gardens Tour.

Second, Defendants argue that liability cannot be premised on the Badge of Excellence because that emblem reflects "objective factors about the listing itself including (1) whether the posting has collected high ratings and a large number of reviews; (2) whether the listing provides customers with instant confirmation, mobile tickets, and an option to cancel the booking with no charge; and (3) whether the listing includes clear photos and a complete description of the activity."[52] Thus, Defendants assert that the Badge of Excellence is "a neutral representation of third-party reviews and objective factors relating to *the listing*," rather than "an advertisement of safety" or "an endorsement of the underlying product."[53]

Defendants' argument attempts to fit the Badge of Excellence at issue here into the holding of *Kimzey*. In that case, the plaintiff sought to hold Yelp liable for a review authored and posted by a third-party user on the theory that "Yelp transformed the review . . . into its own 'advertisement' or 'promotion'" by including the review and associated one-star rating "into a single, aggregate metric." *Kimzey*, 836 F.3d at 1270. The Ninth Circuit held that the "rating system, which [was] based on rating inputs from third parties and which reduce[d] [that] information into a single, aggregate metric" was

---

[49]     *See* Reply 18:8–18.

[50]     Complaint ¶ 19.

[51]     *Id.* at ¶ 26.

[52]     Reply 18:2–8.

[53]     *Id.* at 18:9–14 (emphasis in original).

not a "material contribution" sufficient to override Section 230 immunity. *Id.* at 1270.
After the Ninth Circuit's *Kimzey* decision, courts have generally declined to find that a
defendant materially contributes to content by creating neutral tools that merely
aggregate or repackage other third-party content, *see, e.g.*, *Doe v. Reddit, Inc.*, 2021 WL
5860904, at *5 (C.D. Cal. Oct. 7, 2021), and Defendants ask the Court to fit the Badge of
Excellence within that line of cases.

The Court is not persuaded that the Badge of Excellence is an aggregate metric
akin to that in *Kimzey*. The star rating system in *Kimzey* was a pure aggregation metric
that did not include Yelp's own impressions about the quality of a business. *See Kimzey*,
836 F.3d at 1270. Niedziela, in contrast, alleges that the Badge of Excellence reflects
Viator's evaluation of the quality of the Waterfall Gardens Tour, which included
conclusions that Viator drew as a part of its intense vetting process.[54] To the extent that
Defendants dispute the truth of Niedziela's allegations about the criteria reflected in the
award of the Badge of Excellence or the role of Viator's vetting process in deciding
whether to award the Badge of Excellence to a tour listing,[55] those disputes are not
appropriate for resolution at this stage of the litigation.

Additionally, in *Kimzey*, Yelp did not filter or modify the rating to reflect Yelp's
opinions about the business, and Yelp did not take any active role in deciding which
businesses would receive the star rating or the considerations that were relevant to
awarding a particular star rating. *See id.* Here, even if Defendants are correct that the
Badge of Excellence was awarded based upon "objective" criteria such as whether a tour
permitted mobile booking, those criteria reflected ***Viator's*** determinations about what
conditions affected the quality of a tour experience, not ***third-party determinations***.[56]
Thus, unlike a neutral aggregation tool, the Badge of Excellence credited particular
postings based upon Viator's assessment of those postings. *Cf. Reddit*, 2021 WL
5860904, at *5 (concluding that a website operator did not materially contribute to the
content posted on its website by providing a tool that calculated the number of votes that
a post received without favoring or encouraging any particular type of posts). The Court
is thus persuaded that, for the purpose of the instant Motion, the Badge of Excellence
constitutes Viator's material contribution to the Waterfall Gardens Tour listing, such that
Defendants can be held liable as creators of that content even if other content in the
listing was provided by a third party.

---

[54]    *See* Complaint ¶¶ 13–21 & 26.

[55]    *See* Reply 18:8–18.

[56]    *See id.* at 18:3–8.

Accordingly, the Court **DENIES** Defendants' Motion to dismiss based upon Section 230 immunity.

### 2.    Waiver of Liability

Defendants contend that, in the event that Section 230 does not immunize them from liability in this action, Niedziela's claims are nevertheless barred by an exculpatory clause contained in Viator's Terms of Use.[57]  Specifically, Defendants argue that the Terms of Use provide that the inclusion of content on Viator's website does not constitute an endorsement of that content; that Defendants "disclaim[] all warranties and conditions"; and that Defendants are "not liable for the acts, errors, omissions, representation, warranties, breaches, negligence or misconduct" of any tour operator "or for any personal injury, death, property damage, or other damages or expenses resulting" from, "arising out of, or in any way connected with a product or booking."[58]

For the Terms of Use to be enforceable, Defendants must show that Niedziela had inquiry notice of the terms, which is true only if (1) the Viator website provided "reasonably conspicuous notice of the terms to which" Niedziela would be bound; and (2) Niedziela took "some action, such as clicking a button or checking a box, that unambiguously manifest[ed] [her] assent to those terms." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).  It is undisputed that displayed above the button that Niedziela clicked to book the Waterfall Gardens Tour was Viator's notice: "By clicking 'Book Now', you are acknowledging that you have read and are bound by Viator's Customer Terms of Use, Privacy Policy, plus the tour operators rules & regulations (see the listing for more details)."[59]  Thus, the question is whether that notice was reasonably conspicuous.  *See Berman*, 30 F.4th at 856.

The Ninth Circuit has imposed at least two requirements for concluding that a defendant provided reasonably conspicuous notice of its terms and conditions.  First, the notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* at 856.  Second, if the defendant provides terms through a hyperlink, "the fact that a hyperlink is present must be readily apparent." *Id.* at 857.  In deciding whether those requirements are met, courts consider the size and color of the font of the notice in relation to any surrounding text, whether the screen on which the notice is displayed is "uncluttered," whether the hyperlink is underlined in blue text, and whether the notice is "directly adjacent to the

---

[57]    *See* Motion 19:9–20:15.

[58]    *Id.* at 20:6–15.

[59]    *See* Exhibit D.

button intended to manifest assent to the terms." *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (9th Cir. 2017).

In arguing that the notice provided to the Niedzielas was reasonably conspicuous, Defendants equate Viator's notice with the notices provided by the defendants in *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 516 (9th Cir. 2023), and *Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024). In *Oberstein*, the defendant website presented users with a confirmation button at "three independent stages" of the task of purchasing tickets through the website. *Oberstein*, 60 F.4th at 515. At each stage, "users [were] presented with a confirmation button above which text inform[ed] the user that, by clicking on this button," the user agreed to the Terms of Use. *Id.* Each time, the text was displayed directly above the button, and the Terms of Use hyperlink was "conspicuously distinguished from the surrounding text in bright blue font." *Id.* at 516. Similarly, in *Keebaugh*, the Terms of Use were displayed on a "sign-in screen" that "lack[ed] clutter" and were highlighted by contrasting text. *Keebaugh*, 100 F.4th at 1021. The *Keebaugh* notices are reproduced below:





2020 Version

    Niedziela, in contrast, argues that Viator's notice is like that provided in *Berman*. In that case, the Ninth Circuit held that notice of the defendant's terms and conditions was not conspicuous because that notice was "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it [was] barely legible to the naked eye." *Berman*, 30 F.4th at 856–57. Further, the hyperlink to the terms and conditions was underlined but not highlighted in a

"contrasting font color" or displayed in "all capital letters." *Id.* at 857. That notice is
reproduced below:



For comparison, the image below is a copy of the page on which Viator displayed its Terms of Use:



The Court concludes that, as in *Berman*, Viator's booking screen does not provide reasonably conspicuous notice of Viator's Terms of Use.

First, the Terms of Use are "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856–57. Relative to the size of the screen, the notice is "so small that it is barely legible to the naked eye." *Id.* The notice is also printed in pale gray text, which causes it to blend in with—rather than stand out against—the white background. *See id.* Those characteristics differ from the notice in *Keebaugh*, which was pale gray against a black background and, thus, highly contrasted. *See Keebaugh*, 100 F.4th at 1010.

Next, Viator's booking screen is cluttered, and, like the webpage in *Berman*, the Viator booking screen "deemphasize[s]" the Terms of Use because the screen includes "other visual elements [that] draw the user's attention away" from that text. *See Berman*, 30 F.4th at 857. Although the rest of Viator's booking screen uses bright colors and icons, boxes, and bold fonts to attract the consumer's attention, the Terms of Use are displayed in simple text. And, unlike the notices in *Keebaugh*, the Viator Terms of Use appear along with other text above the green "Book Now" button, rather than on their own, which further obscures the notice. *Cf. Keebaugh*, 100 F.4th at 1010.

Finally, the hyperlink that a consumer could click to view the Terms of Use is not "readily apparent." *See Berman*, 30 F.4th at 857. Although the hyperlink is bold and underlined, it is not highlighted in blue or "set apart" from the surrounding text. *See id.* And, as the Ninth Circuit has noted, "[s]imply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id.*

Thus, the Court concludes as a matter of law that Viator's Terms of Use were not reasonably conspicuous, and Niedziela is not bound by the exculpatory clause contained therein.

### 3. Separate Liability for Tripadvisor

Tripadvisor asks that, if the Court concludes that neither Section 230 nor the exculpatory clause bars this action—as the Court does here—it should nevertheless dismiss Niedziela's claims against Tripadvisor because Niedziela has not alleged "facts that would support any cognizable theory of liability specifically as to Tripadvisor."[60] Specifically, Tripadvisor argues that Niedziela's claims against it depend entirely on the parent-subsidiary relationship between Viator and Tripadvisor and that that relationship is not a basis for liability.[61]

In general, "a parent corporation . . . is not liable for the acts of its subsidiaries." *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). In arguing that she has alleged more than mere vicarious liability based upon corporate structure, Niedziela cites various facts related to Tripadvisor's involvement in creating or reviewing listings that appear on the Viator website.[62] Because those facts were not alleged in the Complaint, the Court **GRANTS** Defendants' Motion with respect to Tripadvisor and **DISMISSES** those claims **without prejudice**, but it will permit Niedziela to amend her Complaint to allege additional facts regarding those claims.

### V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    Defendants' instant Motion to dismiss [ECF No. 17] is **GRANTED in part** and **DENIED in part**. Specifically,

---

[60]    Motion 21:7–8.

[61]    *Id.* at 21:14–15.

[62]    Opposition 23:16–24:16.

a.  Defendants' Motion is **GRANTED** with respect to Niedziela's claims against Tripadvisor, and those claims are **DISMISSED without prejudice**; and

b.  Defendants' Motion is **DENIED** with respect to Niedziela's claims against Viator.

2.  Niedziela is **DIRECTED** to file an amended pleading, if at all, no later than October 10, 2025. If Niedziela chooses to file an amended pleading, then she is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Complaint that provides the Court with a redline version that shows the amendments. If Niedziela fails to file her amended pleading by October 10, 2025, then the Court will **DISMISS** Niedziela's claims for relief against Tripadvisor **with prejudice**.

3.  Defendants are **DIRECTED** to file their respective responses to Niedziela's operative pleading no later than October 24, 2025.

4.  The parties are **DIRECTED** to meet and confer regarding the case schedule and to file a joint proposed case schedule no later than November 7, 2025. If the parties cannot agree on a case schedule, then the parties shall provide the Court with the following:

a.  the parties' respective proposed case schedules;

b.  each party's justification therefor; and

c.  each party's objections to the other party's proposed case schedule.

5.  A Scheduling Conference is **SET** for November 21, 2025, at 11:00 a.m. Counsel for the parties are **DIRECTED** to appear at that date and time in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

**IT IS SO ORDERED.**

Dated: ___September 25, 2025___

John W. Holcomb
UNITED STATES DISTRICT JUDGE